# EXHIBIT C

OCT 22 '20 PM 1:11
OHIO CO CIRCUIT COURT

IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

CHARLES P. MCDANIEL,
*on behalf of himself and all individuals*
*similarly situated,*

     Plaintiffs,

v.                Case No. 20-C-169 REW

MARK CURRY, AMERICAN WEB LOAN, INC.,
AWL, INC., RED STONE, INC., MEDLEY
OPPORTUNITY FUND II LP, and MEDLEY
CAPITAL CORPORATION,

     Defendants.

### AMENDED CLASS ACTION COMPLAINT

  COMES NOW Plaintiff Charles P. McDaniel ("Plaintiff"), *on behalf of himself and all*

*individuals similarly situated*, by counsel, and for their Amended Class Action Complaint

against Defendants, they allege as follows:

### INTRODUCTION

  1.  Most states have enacted usury laws that limit the amount of interest that a

company may charge on a loan. To evade these laws, payday lenders originated their loan

products in the name of national banks, who were exempt from state interest-rate caps under

the National Bank Act. *See* 12 U.S.C. § 85. Under these arrangements, the bank served as a

conduit for the loans in exchange for a fee, but the payday lender funded, serviced, and collected

the loans—a tactic known as "rent-a-bank."  When state and federal regulators began cracking

down on these rent-a-bank arrangements, *see CashCall, Inc. v. Morrissey*, No. 12-1274 (W.Va.

May 30, 2014) (memorandum decision), the payday lenders developed a solution—they

adapted the structure to use Native American tribal entities as the conduit to ostensibly cloak



**BORDAS**
**AND**
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

the loans in tribal sovereign immunity.[1] Hence, the new structure has been dubbed "rent-a-tribe" lending.

2.       This case involves a rent-a-tribe enterprise created and operated by Defendant Mark Curry ("Curry")—an entrepreneur with no lineage to the Otoe-Missouria Tribe.[2] For the past several years, Curry's companies, namely the MacFarlane Group, Inc., made millions of dollars through loans issued in the name of Defendant American Web Loan—an entity formed under the laws of the Otoe-Missouria Tribe for the dual purpose of avoiding state and federal laws and concealing the role of Curry's companies. Although American Web Loan is held out as the "lender" of the internet loans, the Otoe-Missouria Tribe had minimal involvement in the operations and received a mere 1% of the net profits from the loans.

3.       On the other hand, Curry's companies, namely the MacFarlane Group, reaped nearly all the profits; provided the infrastructure to market, fund, and collect the loans; and controlled the tribal companies' bank accounts. In other words, Curry and the MacFarlane Group were the *de facto* lenders and controlled the day-to-day operations of American Web Loan. *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. CV157522JFWRAOX, 2016 WL 4820635, at *6 (C.D. Cal. Aug. 31, 2016) (finding a rent-a-tribe operator was the "true lender" under the circumstances). Curry participated in and oversaw the illegal lending enterprise rendering him personally liable. *Id.* at *11 (C.D. Cal. Jan. 19, 2018) (finding the president and



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

---

[1] *See, e.g.,* Nathalie Martin & Joshua Schwartz, *The Alliance Between Payday Lenders and Tribes: Are Both Tribal Sovereignty and Consumer Protection at Risk?*, 69 Wash. & Lee L. Rev. 751, 785 (2012) (providing background on payday loans and describing the rent-a-tribe model as "the most recent incarnation of payday lending companies regulation-avoidance").

[2] The Otoe-Missouria Tribe of Indians is a federally recognized Native American tribe headquartered in Red Rock, Oklahoma. The Tribe has approximately 3,000 enrolled members, the majority of which live off-reservation.

2

chief executive officer of a rent-a-tribe lending business liable for a $10.2 million-dollar judgment because "he directly participated in and had the ability to control" the deceptive acts).

4.    Faced with mounting pressure against similar rent-a-tribe ventures and a cease and desist issued to the Otoe-Missouria Tribe by the State of New York, Curry "sold" the MacFarlane Group to Defendant Red Stone, Inc.—a company owned by the Otoe-Missouria Tribe—in an attempt to shield MacFarlane Group's illegal business practices. The sale was completed through a merger of the MacFarlane Group with Red Stone so the Defendants could claim—albeit in contradiction to state law—that MacFarlane was now "an arm of the tribe" and, thus, protected by tribal immunity for its *pre-merger misconduct*. Nev. Rev. Stat. Ann. § 92A.250(1)(d) (establishing that when "a merger takes effect" the "surviving entity has all of the liabilities of each other constituent entity[.]").[3] Even though the key entities were

---



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

[3] Plaintiff anticipates that American Web Loan and Red Stone will claim to be "an arm of the tribe" and thus protected by tribal immunity. Although the doctrine of tribal sovereign immunity protects the tribe itself, it does not automatically extend to economic subdivisions of a tribe, and the Court must determine whether these entities are "analogous to a governmental agency, which should benefit from sovereign immunity" or whether they are more like a "commercial business enterprise, instituted for the purpose of generating profits for [their] private owners." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1184 (10th Cir. 2010) (citing *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 293 (Minn.1996)). In addition to the allegations alleged in this Complaint concerning the creation, purpose, and structure of the rent-a-tribe enterprise, American Web Loan is not entitled to sovereign immunity because 99% of the profits of the scheme went to non-tribal participants and the companies were established for the sole purpose of evading state usury laws. Further, Red Stone simply absorbed a Nevada company, MacFarlane Group, for the purpose of avoiding legal responsibility. *Sommerlath v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1149–50 (10th Cir. 2012) (explaining that sovereign immunity "is inapplicable to entities which are legally distinct from their members and *which voluntarily subject themselves to the authority of another sovereign which allows them to be sued*.") Red Stone's purchase of the MacFarlane Group "voluntarily subject[ed] [itself] to the authority of another sovereign," and it should be treated like any other foreign limited liability company or domestic corporation. *Id.* at 1154 (Gorsuch, J., concurring). Accordingly, neither American Web Loan nor Red Stone qualify as arms of the tribe.

3

reorganized and renamed, however, the rent-a-tribe venture continues to operate in the same manner—with nominal involvement of and benefit to the Otoe-Missouria Tribe.

5.      Through a series of agreements with the MacFarlane Group and American Web Loan, Defendants Medley Capital Corporation and Medley Opportunity Fund II, L.P. ("Medley Defendants") provided the capital used to make the high-interest loans to consumers through the rent-a-tribe enterprise and, in return, generated large profits from its investment in the scheme. Upon information and belief, Medley Defendants reinvested those profits to expand the portfolios of American Web Loan—resulting in the unlawful collection of debt from West Virginia consumers.

6.      This lawsuit challenges the legality of the rent-a-tribe loans and seeks to enforce West Virginia's longstanding public policy against usurious loans. Based on Defendants' conduct, Plaintiff alleges claims arising under both common law and state statutory law governing the amount of interest that may lawfully be charged. Defendants received millions of dollars derived from the collection of unlawful debt. Further, Defendants acquired and maintained interests in the rent-a-tribe enterprise, actively participated in the scheme, and conspired with each other and others to repeatedly violate state lending statutes resulting in the collection of an unlawful debt from Plaintiff and the class members. Accordingly, Plaintiff seeks individual and class relief under the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-1-101, *et. seq.*, W.Va. Code § 47-6-6 and the common law.

7.      Plaintiff has complied with the right to cure provisions of West Virginia Code § 46A-5-108.  No cure offer was received.

8.      In addition to making illegal loans, the collection of usurious debt is, in and of itself, an unfair or unconscionable debt collection practice in violation of W.Va. Code § 46A-



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141 .
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

2-128.   Plaintiff alleges as further described below that other lending and debt collection practices committed by Defendants were also contrary to West Virginia's consumer laws. Accordingly, Plaintiff seeks individual and class relief including statutory penalties, cancellation of debt, return of *all payments* made on class member loans, actual damages, attorney fees, and other damages allowable by law.

## JURISDICTION

9.     This court has subject matter jurisdiction pursuant to W.Va. § 51-2-2(b) inasmuch as the amount in controversy, excluding interest, exceeds $7,500.

10.     Venue is proper pursuant to W.Va. § 56-1-1(a)(1) inasmuch as the cause of action arose in this county for the named plaintiff.

## PARTIES

11.     Plaintiff is a natural person and resident of Ohio County, West Virginia.

12.     Defendant Mark Curry ("Curry") is a natural person and resident of Puerto Rico. Curry was the founder and chief executive officer of the MacFarlane Group, which Curry created to make and collect the usurious loans described herein. As explained below, Curry was the architect of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise. Curry is also personally liable under Nevada's dissolution laws. Nev. Rev. Stat. Ann. § 92A.250(1)(c).

13.     Defendant American Web Loan, Inc. ("American Web Loan") purports to be a corporation formed under the laws of the Otoe-Missouri Tribe of Indians ("Otoe-Missouri Tribe" or "Tribe") doing business as an internet lending website under the domain name www.americanwebloan.com. In return for a small fraction of the revenue, the Otoe-Missouri Tribe formed American Web Loan under tribal law and allowed it to falsely claim that it was



BORDAS
AND
BORDAS

ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

operated by the Tribe. At all times relevant hereto, the Tribe did not participate in the day-to-day operations of American Web Loan, did not fund the loans or handle the servicing or collection of the loans, and received a nominal percentage of the proceeds from the loans.

14.     Defendant AWL, Inc. ("AWL") is a corporation formed under the laws of the Otoe-Missouri Tribe. AWL is a special purpose corporation formed to allow non-tribal members to hold a security interest in AWL. According to an October 11, 2016, District of Columbia UCC filing, three entities hold a security interest in the assets of Defendant AWL, Inc. (excluding certain tribal trust property and equity interests in tribal entities): First Infinity Holdings, Inc. (Attn: Mark Curry); First Mountain Holdings, Inc. (Attn: Mark Curry); and First CM Holdings, Inc. (Attn: Mark Curry).

15.     Defendant Red Stone, Inc. ("Red Stone"), is a corporation formed under the laws of the Otoe-Missouri Tribe. Due to several governmental enforcement actions against rent-a-tribe enterprises, Curry sold MacFarlane Group to Red Stone in an attempt to shield MacFarlane Group's illegal business practices. Red Stone is the "surviving entity" of the merger between Red Stone and the MacFarlane Group.

16.     Defendant Medley Opportunity Fund II, LP (the "Medley Fund") is a Delaware limited partnership with a principal place of business located at 375 Park Avenue, 33rd Floor, New York, New York 10152. Medley played an integral role in the rent-a-tribe enterprise as a pooled investment fund created to raise and provide the capital to fund the millions of dollars of illegal loans made to consumers. The enterprise used the money from Medley to make the illegal loans to consumers and, in return, the enterprise returned profits to Medley and its investors.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

6

17.     Defendant Medley Capital Corporation ("Medley Capital") is a Delaware Corporation with a principal place of business located at 375 Park Avenue, 33rd Floor, New York, New York 10152. Medley Capital is an investment management company specializing in "lending directly to privately-held middle market companies," such as MacFarlane Group and American Web Loan. Medley Capital is the corporate parent and controlling entity of the Medley Fund.

## FACTUAL BACKGROUND

### A.    Statutory and Regulatory Background

18.     "The purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation. Law-making authorities in almost all civilizations have recognized that the crush of financial burdens causes people to agree to almost any conditions of the lender and to consent to even the most improvident loans." *See, e.g., Schneider v. Phelps*, 359 N.E.2d 1361, 1365 (N.Y. 1977).

19.     "[P]rohibitions against usury have been an integral part of the public policy and statutory law of this State since its proclamation." *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 492, 207 S.E.2d 897 (1974).  Even before West Virginia's statehood, Virginia proactively legislated against usurious contracts.

20.     "[T]he usury statute is based upon a public policy to protect distressed debtors from usurious lenders. **This statute is necessarily harsh.**" *Hall v. Mortgage Security Corp. of America*, 119 W.Va. 140, 149, 192 S.E.2d 145 (1937) (emphasis added).

21.     To engage in business in West Virginia, a nonresident company must first be registered with the secretary of state. W.Va. § 31D-15-1501.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

22.     West Virginia's general usury statute, W.Va. Code § 47-6-5, provides that "parties may contract in writing for the payment of interest for [a] loan or forbearance or money not to exceed $8 upon $100 for a year."

23.     None of Defendants are licensed as regulated consumer lenders under W.Va. Code § 46A-4-101 et seq.  Consequently, under W.Va. Code § 46A-3-104(d), the maximum legal rate of interest Defendants may charge for loans in West Virginia is 8%.

24.     If a person violates the applicable interest rate cap, West Virginia law imposes severe consequences, including a statutory penalties.  W.Va. Code § 47-6-6; W.Va. Code § 46A-5-101.

25.     The foregoing statutes are designed to protect consumers from predatory lenders, who have sought to evade state lending laws like West Virginia's by entering into ventures with Native American tribes "so they can use tribal immunity as a shield for conduct of questionable legality." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2052 (2014) (Scalia, J., dissenting) (citing Martin & Schwartz, *supra,* 69 Wash. & Lee L. Rev. at 758–759).

**B.      Overview of tribal lending.**

26.     In a "payday" loan, a consumer who can't afford to wait until payday receives a cash advance and, in exchange, the lender subtracts a larger amount from the consumer's paycheck. Consumers renew the loans when they are unable to pay them off, creating a cycle of mounting debt.

27.     Over the past decade, payday lending has become "one of the fastest growing segments of the consumer credit industry," and as of 2005 "there were more payday-loan stores in the United States than McDonald's, Burger King, Sears, J.C. Penney, and Target stores combined." Martin & Schwartz, *supra,* 69 Wash. & Lee L. Rev. at 759 (quoting Karen E.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

Francis, Note, *Rollover, Rollover: A Behavioral Law and Economics Analysis of the Payday Loan Industry*, 88 Tex. L. Rev. 611, 611-12 (2010)).

28.     It is no secret that "internet payday lenders have a weak history of complying with state laws." *Id.* at 764. Prior to the rent-a-tribe business model, some payday lenders entered into partnerships with national banks to avoid compliance with state laws.[4]

29.     Beginning in 2005, federal regulators began cracking down on rent-a-bank arrangements, and they were nearly eliminated by 2010—largely by the assessment of penalties and fines against participating banks. *See, e.g.*, Creola Johnson, *America's First Consumer Financial Watchdog Is on A Leash: Can the CFPB Use Its Authority to Declare Payday-Loan Practices Unfair, Abusive, and Deceptive?*, 61 Cath. U. L. Rev. 381, 399 n. 16 (2012).

30.     In response to the crackdown on rent-a-bank arrangement, several payday lenders reincarnated the lending model through associations with Native American tribes to avoid state laws. *Id.*; *see also* Martin & Schwartz, *supra* at 1.

31.     "In these partnerships, online payday lenders register businesses on Native American lands and claim to be exempt from lawsuits and state usury caps under tribal sovereign immunity. Using this doctrine, lenders argue that because their businesses are located on or headquartered within the borders of a Native American reservation, they are bound by the laws of that reservation only, not the laws of the state in which the reservation is located or the state in which the borrower resides." *Id.*

---

[4] *See, e.g.*, Jean Ann Fox & Edmund Mierzwinksi, *Consumer Fed'n of Am. & U.S. Pub. Interest Research Grp.*, *Rent-a-Bank Payday Lending: How Banks Help Payday Lenders Evade State Consumer Protection* at 17-22 (2001), available at www.consumerfed.org/pdfs/paydayreport.pdf

BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

9

### C.   Curry Establishes a Rent-a-Tribe Enterprise to Avoid Usury Laws.

32.     Curry is the architect of the rent-a-tribe lending enterprise described herein—one of the few yet to be criminally convicted for his role in this type of lending scheme.[5]

33.     Curry is the former president, chief executive officer, and majority shareholder of MacFarlane Group, as well as several other companies who participated in the rent-a-tribe enterprise.

34.     As early as 2009, Curry recognized the exorbitant profits he could achieve by not complying with state usury laws.

35.     To that end, Curry established a rent-a-tribe lending model for his company, MacFarlane Group, associating their loans with the Otoe-Missouria Tribe (the "Tribe"), a federally recognized tribe located in Oklahoma.

36.     Although the Tribe held itself out as the actual lender of the loans issued in the name of American Web Loan, the Tribe was merely a front, and MacFarlane Group provided the infrastructure to market, fund, underwrite, and collect the loans, including by providing the following services: marketing, lead generation, technology platforms, payment processing, servicing and collection procedures.

37.     The Tribe allowed Curry and the MacFarlane Group to use its name as a front and, in return, received a 1% flat fee of the revenue. Zeke Faux, *Payday Lenders Find Home*

---

[5] *See* The United States Attorney's Office, Southern District of New York, Scott Tucker Sentenced To More Than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise (Jan. 8, 2018), https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday; The United States Attorney's Office, Eastern District of Pennsylvania, Two Men Found Guilty of Racketeering Conspiracy in Payday Lending Case, (Nov. 27, 2017), https://www.justice.gov/usao-edpa/pr/two-men-found-guilty-racketeering-conspiracy-payday-lending-case

BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

*on Indian Reservations*, Bloomberg News (Nov. 30, 2014) ("The tribe keeps about 1 percent, according to Charles Moncooyea, who helped strike the deal with Curry in 2010 when he was the tribe's vice chairman.").

38.     After accounting for expenses and payments to investors, the remaining profits were distributed to Curry through the MacFarlane Group. Steve Vockrodt, *American Indian tribe buys Mission-based payday loan servicing firm MacFarlane Group*, The Kansas City Star (Oct. 27, 2016)("MacFarlane Group generated more than $100 million in revenue from American Web Loan and another website owned by the Otoe-Missouria Tribe, with the tribe keeping 1 percent.").

39.     Because of its limited role, the Tribe had no control over the income or expenses of American Web Loan and, as the tribe's former vice chairman put it: "we didn't have any control at all." Faux, *supra*.

40.     Upon information and belief, tribal members did not participate in the day-to-day operations of American Web Loan and nearly all the activities associated with the lending operation occurred off the Otoe-Missouria Reservation, such as the call centers, payment processing, and servicing of the loans.

41.     Moreover, nearly all activities performed on behalf of American Web Loan were performed by non-tribal officers and employees of MacFarlane Group who were located in offices off the reservation.

42.     Upon information and belief, the money loaned to Plaintiffs was transferred from a bank account owned and operated or controlled by MacFarlane Group and Curry, and neither the Tribe nor its officials were allowed to access the accounts.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

11

43.     Furthermore, neither American Web Loan nor any other purported tribal entity ever accepted consumer payments after the loan agreement was executed. Rather, all payments went to MacFarlane Group, who then kicked back, at most, the 1% flat fee to the Tribe.

44.     Defendants' business relationship with the Tribe was nothing more than an attempt to mislead consumers and regulators by an illusion that Defendants were protected by tribal immunity.

**D.     Curry sells the MacFarlane Group to the Otoe-Missouria Tribe.**

45.     In August 2013, the New York Department of Financial Services issued a cease and desist to the Otoe-Missouria Tribe warning it to stop offering its illegal credit products to New York consumers. *Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*, 974 F.Supp.2d 353, 356 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014).

46.     The New York Department of Financial Services also issued warnings to third parties, such as banks and payment processors, to cease providing electronic banking services to American Web Loan, and these third parties "cut back or cut off entirely their financial dealings with the Tribes." *Id.*

47.     In response, the Otoe-Missouria Tribe and several others filed a lawsuit in August 2013, seeking declaratory relief and a preliminary injunction that tribal businesses were inherently sovereign nations and not subject to New York law. *Id.*

48.     The district court denied the Otoe-Missouria Tribe's request for a preliminary injunction on September 30, 2013, finding that the "undisputed facts demonstrate[d]" that the illegal activity was "taking place in New York, off of the Tribes' lands," and thus, the loans were "subject to the State's non-discriminatory anti-usury laws." *Id.* at 361.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

12

49.     The court reasoned, "There is simply no basis... that the Tribes are treated differently from any other individuals or entities that enter New York to lend to New York resident." *Id.*

50.     The Second Circuit affirmed the decision, 769 F.3d 105, which was a death knell to the rent-a-tribe business model. *See, e.g., Pennsylvania by Shapiro v. Think Fin., Inc.*, No. 14-CV-7139, 2018 WL 637656, at *3 (E.D. Pa. Jan. 31, 2018) (describing an e-mail from the chief financial officer of another rent-a-tribe venture regarding the impact of the ruling in *Otoe-Missouria*).

51.     In addition, various lawsuits and government enforcement actions against Defendants' competitors brought negative attention to his sham business model.[6]

52.     Faced with the loss in *Otoe-Missouria* and the mounting pressure against similar ventures, Curry developed a solution that allowed him to continue to retain the majority of the profits, yet create additional layers of protection from liability.

53.     The solution was the sale of the MacFarlane Group to Red Stone, a tribal entity, in an effort to further insulate the scheme from liability. *See* Certificate of Ownership and Merger (Sept. 21, 2016).

54.     Upon information and belief, while the MacFarlane Group "merged" with Red Stone, it continues to be operated in the same manner and by the same individuals who ran MacFarlane Group—none of whom are affiliated with the Tribe.

---

[6] *See, e.g., In Re CashCall, Inc.*, 2013 WL 3465250, at *1 (NH Banking Dept. 2013) ("it appears that Western Sky is nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators."); *Consumer Fin. Protection Bureau v. CashCall, Inc.*, No. 1:13-cv-13167 (Mass) (complaint filed on Dec. 16, 2013); *In re Moses*, No. 12-05563-8-RDD, 2013 WL 53873, at *4 (Bankr. E.D.N.C. Jan. 3, 2013).

13

BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

55.     And regardless of the merger, Nevada's dissolution laws allow Plaintiffs to bring these claims against Curry and Red Stone. Nev. Rev. Stat. Ann. § 92A.250(1)(c) (establishing that when "a merger takes effect" the "owner of a constituent entity remains liable for all the obligations of such constituent entity existing at the time of the merger to the extent the owner was liable before the merger[.]"); *see also* Nev. Rev. Stat. Ann. § 92A.250(1)(d) (establishing that when "a merger takes effect" the "surviving entity has all of the liabilities of each other constituent entity[.]"); Nev. Rev. Stat. Ann. § 92A.250(1)(c).

**E.     Medley's Role in the Enterprise.**

56.     Medley Capital, through its ownership interest in and control over the Medley Fund, provided substantial capital to fund the loans to consumers and worked together with the other entities described herein to systemically perpetrate fraud and to scam consumers.

57.     As explained above, the Medley Fund was created by Medley Capital to allow investors to purchase interests in the consumer loans originated by the rent-a-tribe scheme.

58.     Upon information and belief, Medley Capital invested and reinvested its own money in the Medley Fund and raised money from third party investors who were issued shares in the Medley Fund.

59.     Medley Fund provided the capital to the McFarlane Group, who then used it to fund the loans made in the name of American Web Loan. Faux, *supra* ("Curry, whose payday-loan websites have been sanctioned by state regulators for the past seven years, is in turn backed by a New York hedge fund, Medley Opportunity Fund II.")

60.     For example, on or around December 2011, Medley Fund provided MacFarlane Group with at least $30 million dollars and, in return, Medley received a first priority security lien on all assets of the MacFarlane Group.



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

61.   The MacFarlane Group used the $30 million-dollar loan to issue loans in the name of American Web Loan.

62.   Medley Fund reinvested funds into the American Web Loan enterprise on or about September 2014. *See* Uniform Commercial Code Report (Sept. 29, 2014) (attached as Exhibit 2).

63.   Medley Fund continued to invest and provide additional capital to the MacFarlane Group, and still provided financing for the loans through June 2016.

64.   Upon information and belief, Medley Fund continues to provide financing for the loans to date.

**F.    Defendants' Loans Violated West Virginia's Usury Laws.**

65.   Defendants marketed, initiated, and collected usurious loans in West Virginia. Curry chose West Virginia as a place where loans and collection efforts would ensue, and he participated in and knew of the actions of MacFarlane Group and American Web Loan in West Virginia.

66.   Curry knew the subject loans were illegal under West Virginia law, but he pursued the scheme anyway through MacFarlane Group and American Web Loan.

67.   In order to qualify for the loan product, consumers were required to electronically sign a form contract created by Curry and MacFarlane Group—not created by the Tribe.

68.   Because they themselves generated the loans, collected the loan payments, and retained 99% of those payments, Defendants had the predominant economic interest in the loans they marketed, initiated, and collected in West Virginia, including Plaintiff's loan. Accordingly, Defendants—and not the Tribe—are treated as the lender for purposes of West



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

Virginia's usury laws. *CashCall, Inc. v. Morrissey*, No. 12-1274 (W.Va. May 30, 2014) (memorandum decision).

69.     None of the Defendants were registered with the secretary of state as required by W.Va. Code § 31D-15-1501. Accordingly, they were not authorized to do business in the State of West Virginia and, specifically, to engage in consumer lending.

70.     The Defendants do not qualify as "a bank," "a regulated consumer lender," or a "credit union" as contemplated by W.Va. Code § 46A-3-104(1) and, therefore, are treated as "any other lender" for which the maximum finance charge is set forth in W.Va. Code § 47-6-5.

71.     According to W.Va. Code § 47-6-5, "[p]arties may contract in writing for the payment of interest for the loan or forbearance of money at a rate not to exceed $8 upon $100 for a year, and proportionately for a greater or less sum, or for a longer or shorter time, including points expressed as a percentage of the loan divided by the number of years of the loan contract."

72.     Regulated Consumer Lenders are exempt from the general rule set forth in W.Va. Code § 47-6-5. A lender seeking to charge a finance charge in excess of 18% per annum must obtain a Regulated Consumer Lender license.

73.     "Regulated Consumer Lender" means a person authorized to make or take assignments of regulated consumer loans.

74.     "Regulated Consumer Loan" means a consumer loan, including a loan made pursuant to a revolving loan account, in which the rate of the loan finance charge exceeds eighteen percent per year as determined according to the actuarial method, except where the loan qualifies for federal law preemption from state interest rate limitations, including federal law bank parity provisions, or where the lender is specifically permitted by state law other than



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

16

article four of this chapter to make the loan at that rate without a requirement the lender hold a regulated consumer lender license.

75.  None of the Defendants were registered as Regulated Consumer Lenders under W.Va. Code § 46A-4-101, *et seq*. and accordingly were not permitted to make loans in which the rate of the loan finance charge exceeds eighteen percent per year.  None of the exceptions to the requirement that a lender hold a regulated consumer lender license apply to these Defendants.

76.  Even Regulated Consumer Lenders may not charge an interest rate that exceeds 31%. *See*, W.Va. Code § 46A-4-107.

77.  Under the terms of the Defendants' standard Loan Agreement, the interest rate charged to putative class members was significantly greater than 8%, 18% or even 31% APR.

78.  For example, Defendants charged Plaintiff McDaniel with an APR of over 500%.

79.  Specifically, on August 9, 2018, Plaintiff obtained a loan in the principal amount of $700, payable in 20 biweekly installments of approximately $189.32 beginning on August 23, 2018.

80.  According to the terms of the loan, the total amount of interest agreed to be paid over the payment schedule was $3,084 (approximately 4.4 times the amount borrowed).

81.  Plaintiff made the installment payments required under the terms of the loan through November 29, 2018.

82.  Almost all of the payments made by Plaintiff during that time were applied to interest.  In fact, despite making payments in the amount of $1,514.56, only $34.95 was actually applied to the principal.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

83.     Defendants received at least $1,514.56 in payments from Plaintiff McDaniel as a result of Defendants' illegal loan to him—almost all of which Defendants credited as payment for interest ($1,479.61 applied to interest).

84.     Accordingly, after paying more than double the amount borrowed to the Defendants in just 4 months, Plaintiff shockingly still owed $665.05 or 95% of the original loan amount.

85.     The terms of the loan are outrageous and are plainly offensive to the public policy and laws of West Virginia and warrant "harsh" consequences for the Defendants.

**G.     Defendants' Loans Violated Additional Provisions of West Virginia's Consumer Protection Laws.**

86.     "The [West Virginia Consumer Credit Protection Act] is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and must be liberally construed to accomplish that purpose.... It is a comprehensive attempt on the part of the West Virginia Legislature to extend protection to consumers and persons who obtain credit in state." *Harper v. Jackson Hewitt, Inc.,* 227 W.Va. 142, 151, 706 S.E.2d 63, 72 (2010).

87.     West Virginia Code § 46A-5-108(a) provides in pertinent part that "[n]o action may be brought pursuant to this article and articles two, three and four of this chapter until the consumer has informed the creditor or debt collector in writing and by certified mail, return receipt requested, to the creditor's or debt collector's registered agent identified by the creditor or debt collector at the office of the West Virginia Secretary of State . . . of the alleged violation and the factual basis for the violation and provide the creditor or debt collector forty-five days from receipt by the agent or at the principal place of business referenced above of the notice of violation . . .  to make a cure offer, which shall be provided to the consumer's counsel or, if unrepresented, to the consumer by certified mail, return receipt requested."



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

18

88.     On or about August 3 and 4, 2020, Plaintiff sent a written Right to Cure notice to Defendants via Certified Mail, Return Receipt Requested, to their registered agents or principal places of business and a copy was provided to their legal counsel.

89.     The Right to Cure notice alleges violations of W.Va. Code §§ 46A-2-115, 2-118, 2-121, 2-124, 2-127, 2-128, 3-101, 3-104, 3-112 & 113, and 4-101.

90.     The reference to W.Va. Code §§ 46A-3-101, 3-104, and 4-101 involve direct challenges to the usurious terms and failure to obtain a Regulated Consumer Lender license as referenced above.

91.     The reference to West Virginia Code §§ 46A-2-115, 3-112 & 113 relates to separate violations for including provisions that consumers pay excessive and illegal late fees and illegal default fees, such as attorney fees, in the consumer loan agreements at issue.

92.     Under W.Va. Code § 46A-2-128(d), it is illegal to collect any charge, fee or expense, including attorney fees, that is not expressly authorized by the loan agreement itself and by statute or regulation.

93.     The Loan Agreement provides that if Defendants retain an attorney to collect any amounts due and owing, "you will be required to pay the reasonable fees of such attorney." However, no West Virginia statute or regulation authorizes the recovery of attorney fees in connection with the collection of a debt.

94.     At the time applicable to Plaintiff's loan, the maximum amount that could legally be charged for any delinquency or "late" fee was 5% of the payment that was due and owing, but not exceeding $30.  W.Va. Code § 46A-3-112 & 113 (depending on when loans were made the maximum charge was $15).  According to the payment schedule, Plaintiff could not be charged more than $9.50 for a late fee.



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

95.     Nevertheless, the Loan Agreement provides that a flat fee of $20 will be charged for any late payment.

96.     The reference to W.Va. Code § 46A-2-121 addresses the overriding unconscionable nature of the putative class loans, including the procedures Defendant went through to offer the loans combined with their unconscionable terms.   West Virginia law prohibits the making of consumer loan transactions that are unconscionable at the time made, or that were induced by unconscionable conduct such as affirmative misrepresentations, active deceit or concealment of a material fact.

97.     The reference to W.Va. Code §§ 46A-2-124, 127 and 128 relate to the illegal collection of debt. West Virginia law prohibits creditors and debt collectors from making fraudulent, deceptive, or misleading representations and from collecting debts by using unfair or unconscionable means.   In fact, the West Virginia Consumer Credit and Protection Act mandates that debt collection be accomplished by means that are honest, transparent and fair.

98.     By charging and collecting interest in excess of the maximum amounts allowed by law, Defendants engaged in unfair, deceptive, misleading or unconscionable debt collection practices.  Defendants did so under the threat of illegal attorney fees and illegal late fees and the threat to take an accelerated balance directly from Plaintiff's bank account.

## CLASS ALLEGATIONS

99.     Plaintiff brings this action on his own behalf and on behalf of all other similarly situated individuals pursuant to Rule 23 of the West Virginia Rules of Civil Procedure.   The class is presently defined as: All persons with a West Virginia address who received a loan from Defendants within four years of the filing of this action through the date of class certification,

100.     The requirements of Rule 23 are satisfied as follows:



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

a) The class is so numerous that joinder of all members is impracticable;

b) There are questions of law and fact common to all members of the class; and

c) The named Plaintiff's claims are typical of those of the class as a whole.

101.    The Plaintiff has displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interest of the class, and is represented by skillful and knowledgeable counsel.  The relief sought by the named Plaintiff will inure to the benefit of the class generally.

102.    Therefore, the common questions of law and fact predominate over individual questions, and the class action device is superior to other available methods for the fair and efficient adjudication of the controversy.

COUNT I:  Usury and Unlicensed Lender Claims Arising Under the WVCCPA

103.    Plaintiff incorporates the preceding paragraphs by reference.

104.    Plaintiff and the class of persons he represents are each a person who falls under the protection of the WVCCPA and are entitled to the remedies set forth in Article 5 of the WVCCPA.

105.    Plaintiff and the class of persons he represents are each a "consumer" as defined by W.Va. Code §46A-2-122(a) as Plaintiff and each member of the class is a natural person allegedly obligated to pay any debt.

106.    Plaintiff's alleged debt to AWL was incurred primarily for personal, family or household purposes.

107.    The Defendants are debt collectors as defined by W.Va. Code §46A-2-122(d) engaging directly or indirectly in debt collection as defined by W.Va. Code §46A-2-122(c) within the State of West Virginia, including Ohio County, West Virginia.



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

108.    The Defendants contracted for and charged Plaintiff and each member of the class interest rates that far exceed the interest rate permitted by W.Va. Code § 46A-3-104.

109.    The Defendants engaged in the making of "regulated consumer loans" to the Plaintiff and each member of the class without first obtaining a license from the commissioner authorizing them to make regulated consumer loans in violation of W.Va. Code § 46A-4-101.

110.    The Defendants violated W.Va. Code § 46A-2-121 by making consumer loans to the Plaintiff and each member of the class that were unconscionable at the time made, or that were induced by unconscionable conduct.

111.    By charging and collecting interest in excess of the maximum amounts allowed by law, Defendants engaged in unfair, deceptive, misleading or unconscionable debt collection practices in violations of W.Va. Code §§ 46A-2-124, 127 and 128.

112.    All of the acts of Defendants complained of herein were "willful" within the meaning of W.Va. Code § 46A-5-105.

<u>COUNT II:  Usury Claims Arising Under W.Va. Code § 47-6-6</u>

113.    Plaintiff incorporates the preceding paragraphs by reference.

114.    Because Defendants had the predominant economic interest in Plaintiff's loan, they are treated as the lender for purposes of West Virginia's usury law, W.Va. Code § 47-6-6, and are liable for all damages and penalties thereunder.

115.    Defendants were not registered as out-of-state entities with the secretary of state's office and, therefore, they were not authorized to conduct commercial lending in the State of West Virginia.

116.    Accordingly, the maximum legal rate of interest Defendants could charge for loans originating in West Virginia was 8% as provided for in W.Va. Code § 47-6-5.



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

22

117.   The annual interest rate charged by Defendants exceeded 500%, an amount far in excess of the maximum legal rate of 8%.

118.   West Virginia Code § 47-6-6 provides, in part, that any contract setting forth a rate of interest in excess of the maximum legal rate "shall be void as to all interest provided for in any such contract."

119.   In accordance with W.Va. Code § 47-6-9, Plaintiff and the putative class members he represents are entitled to restitution of all excessive payments made under the loan.

120.   West Virginia Code § 47-6-6 further provides that "the borrower or debtor may, in addition, recover from the original lender or creditor or other holder not in due course an amount equal to four times all interest agreed to be paid and in any event a minimum of $100."

121.   According to the terms of Plaintiff's loan, the total amount of interest agreed to be paid over the life of the loan was $3,084.

122.   Consistent with W.Va. Code § 47-6-6, Plaintiff and the putative class members he represents are entitled to recover four times the amount of interest agreed to be paid, which for the named Plaintiff computes to $12,336.

<u>COUNT III:  Additional Illegal Fees under the WVCCPA</u>

123.   Plaintiff incorporates the preceding paragraphs by reference.

124.   By entering into a consumer loan agreements with the Plaintiff and the class of persons he represents that provided for charges as a result of default by the consumer, Defendants violated the WVCCPA, W.Va. Code § 46A-2-115(a).

125.   By threatening to collect additional fees and costs from the Plaintiff and the class of persons he represents, Defendants violated the WVCCPA, W.Va. Code §§ 46A-127 & 128.



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

126.   By threatening to collect additional fees and costs from the Plaintiff and the class of persons he represents, Defendants misrepresented the amount of a claim in violation of W.Va. Code § 46A-2-127(d).

127.   By threatening to collect additional fees and costs from the Plaintiff and the class of persons he represents, Defendants used unfair or unconscionable means to collect a debt in violation of W.Va. Code §46A-2-128.

128.   Under W.Va. Code § 46A-2-128(d), it is illegal to collect any charge, fee or expense, including attorney fees, that is not expressly authorized by the loan agreement itself and by statute or regulation.  No West Virginia statute or regulation authorizes the recovery of attorney fees in connection with the collection of the loans that are the subject of this action.

129.   All of the acts of Defendants complained of herein were "willful" within the meaning of W.Va. Code §46A-5-105.

<u>COUNT IV:  Unjust Enrichment</u>

130.   Plaintiff incorporates the preceding paragraphs by reference.

131.   In West Virginia, if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value.

132.   By charging and collecting interest far in excess of the maximum legal limit, and by violating provisions of West Virginia's consumer laws, Defendants acted unjustly, inequitably, and unconscionably.

133.   Under the circumstances, it would be unjust, inequitable, and unconscionable for Defendants to retain the benefit of the illegal interest they charged and collected from



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

24

Plaintiff and putative class members he represents without requiring them to disgorge that benefit or pay its reasonable value.

134.    This court, through the exercise of its equitable power, should compel Defendants to pay Plaintiff and the putative class members he represents all interest paid to them by Plaintiff in excess of the maximum legal limit.

<u>COUNT V:  Joint Venture &/or Civil Conspiracy</u>

135.    Plaintiff incorporates the preceding paragraphs by reference.

136.    Under West Virginia law, a joint venture is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge.

137.    As more fully alleged above, Defendants combined their property, money, effects, skill, and knowledge for the purpose of carrying out a single business enterprise for profit—*i.e.*, a payday loan business organized in an attempt to take advantage of Tribal law and sovereignty in order to evade state usury and consumer laws.

138.    Defendants shared in the profits and losses attributable to the joint venture.

139.    Defendants exercised a degree of control over one another consistent with the joint venture between them.

140.    As members of a joint venture, each Defendant is deemed by law to be an agent for the others.  Consequently, each Defendant is liable for the tortious acts of the others committed in furtherance of the joint venture.

141.    Under West Virginia law, a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.



BORDAS
AND
BORDAS
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

25

142.   As more fully alleged above, Defendants combined their efforts and resources and operated concertedly to accomplish an illegal purpose—*i.e.*, the making of payday loans in West Virginia for which they charged and collected interest in excess of the maximum legal limit and otherwise violated state consumer laws.  Consequently, Defendants engaged in a civil conspiracy.

143.   As members of a civil conspiracy, each Defendant is deemed by law to be an agent for the others.  Consequently, each Defendant is liable for the tortious acts of the others committed in furtherance of the conspiracy.

## DEMAND FOR RELIEF

Plaintiff, Charles P. McDaniel, and the class of persons Plaintiff represents demand the following relief from Defendants:

(a)   Certification of this matter as a class action under Rule 23 of the West Virginia Rules of Civil Procedure

(b)   For each violation of Chapter 46A, a civil penalty under W.Va. Code § 46A-5-101 & 106

(c)   Restitution of all loan payments under W.Va. Code § 46A-5-101(2)

(d)   Judgment pursuant to W.Va. Code § 47-6-6 for four times the amount of interest agreed to be paid

(e)   Restitution of all interest paid in excess of the maximum legal limit

(f)   A declaration that all class member loans and debts are void as a matter of law, canceled or otherwise unenforceable

(g)   Plaintiff's cost of litigation, including attorney fees and costs; and



**BORDAS**
—AND—
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

(h)     Such other relief as the Court shall deem meet and proper under the attendant circumstances.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

                                        CHARLES P. MCDANIEL, Plaintiff

By:

                                        JASON E. CAUSEY #9482
                                        BORDAS & BORDAS, PLLC
                                        1358 National Road
                                        Wheeling, WV 26003
                                        (304) 242-8410

                                        And

                                        BREN J. POMPONIO #7774
                                        MOUNTAIN STATE JUSTICE, INC.
                                        1217 Quarrier Street
                                        Charleston, WV  23501
                                        (304) 344-3144

                                        *Counsel for Plaintiff*



**BORDAS**
AND
**BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com